# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

————————————

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                  Case No. 1:19-cr-02328-MLG

TIMOTHY BACHICHA,

     Defendant.

## MEMORANDUM ORDER AND OPINION DENYING
## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Timothy Bachicha kidnapped and raped several women in Albuquerque, New Mexico. Doc. 193 at 3 ¶ 6. His crimes followed a similar pattern. Bachicha would drive around Albuquerque offering women rides or propositioning them for a date. Once inside his vehicle—either voluntarily or by force—Bachicha would hold his victims captive for hours, brutalizing and sexually assaulting them. *Id.* At trial, the Government presented overwhelming evidence of Bachicha's guilt—including the victims' accounts of the attacks. *See* Doc. 188 at 39:8-104:2, 117:5-157:19; Doc. 189 at 47:23-126:18; Doc. 191 at 209:4-232:23, 253:3-264:7. The jury found all of it persuasive. Bachicha was convicted on two counts of kidnapping pursuant to 18 U.S.C. § 1201. Doc. 186.

Bachicha now asks this Court to throw out that verdict and release him from custody. Doc. 221. As grounds for his request, Bachicha asserts that the superseding indictment was "fatally deficient" because it fails to state a charge that can be adjudicated under the federal kidnapping statute. *Id.* at 1-3. His jurisdictional argument relies on a recent Tenth Circuit decision that held "'motor vehicles'—an undefined generic term—are not per se instrumentalities of interstate

commerce for purposes of the federal kidnapping statute." *Id.* at 1 (quoting *United States v. Chavarria*, 140 F.4th 1257, 1268 (10th Cir. 2025)). Pointing to that authority, he maintains that his indictment is missing the jurisdictional hook that § 1201 requires because, as in *Chavarria*, the indictment charges that Bachicha used a "motor vehicle, a means, facility, and instrumentality of interstate commerce" in furthering his heinous kidnapping crimes. *See* Doc. 7. The Court is unpersuaded by Bachicha's argument, and for the reasons explained below, the Court denies his motion to dismiss his indictment.

## BACKGROUND

### A.    The Relevant Offenses

A woman identified as R.O. reported that on October 23, 2017, Bachicha offered her a ride in a white, single-cab semi-truck while she was walking home carrying groceries. Doc. 189 at 85:1-86:21. She accepted his offer, but rather than take her home, Bachicha drove R.O. to a secluded area in the Sandia mountains. *Id.* at 87:10-89:19. There, Bachicha raped her, strangled her, and kept her confined in the semi-truck for approximately fifteen hours. *Id.* at 90:15-92:15, 113:1-4 (R.O. testifying she was with Bachicha for around twenty-four hours), 220:9-11 (Albuquerque Police Department Officer Alexander Bassiri explaining that R.O. clarified the assault lasted around fifteen hours). The assault ended only after Bachicha became concerned that a passerby may have heard R.O. screaming. *Id.* at 93:17-94:18. After extracting a promise from R.O. not to report the crime, Bachicha released her. *Id.* at 95:2-16.

Another victim, T.M., reported to law enforcement that "she had been raped[,] forced to perform oral sex[,]" and strangled. *Id.* at 52:9-53:11, 55:7-15; Doc. 224 at 2. In describing the attack, T.M. reported that Bachicha held her captive in a maroon semi-truck and that he pulled out some of her hair. Doc. 189 at 50:8-16, 54:11-15. She also told officers that some of her clothes

were in Bachicha's semi-truck. Doc. 224 at 2; *see also* Doc. 189 at 55:24-56:8. Those statements proved to be true. Albuquerque police subsequently executed a search warrant on Bachicha's vehicle where they recovered two clumps of T.M.'s hair and some of her clothing. Doc. 224 at 2.

Bachicha was arrested and charged for T.M.'s assault, but for reasons unknown to this Court, he was turned loose. *Id.* While on release, Bachicha continued to prey on vulnerable women and committed at least two additional sexual assaults. *Id.*

On September 24, 2018, Bachicha was again operating a white semi[1] when he picked up R.C. at a truck stop. *Id.*; Doc. 188 at 119:17-120:11. "Although the encounter was initially consensual, [Bachicha] later refused to let [R.C.] leave, [and] transported her to a separate location." Doc. 224 at 3. "He strangled [R.C.], forced her to perform sexual acts, and struck her in the face when she bit him in self-defense." *Id.*; *see also* Doc. 188 at 126:5-127:11. The assault lasted nearly sixteen hours. Doc. 188 at 130:19-23. R.C. did not initially report the assault to law enforcement, but a few weeks later, she saw Bachicha's "photo on the news, recognized him as her attacker," and notified law enforcement. Doc. 224 at 3; *see also* Doc. 188 at 134:1-18.

Weeks after raping R.C., Bachicha approached another woman, M.B., as she was walking to a bus stop. *See id.* at 42:18-20, 46:19-47:13. Bachicha asked if she wanted a ride. Doc. 224 at 3; Doc. 188 at 47:11-13. M.B. declined his offer, but Bachicha was undeterred. Doc. 188 at 47:14-17. He forced M.B. into his car—a gold SUV, "registered through Saiz Trucking and Earthmoving, Inc." Doc. 224 at 3; *see also* Doc. 188 at 50:18-51:4. Bachicha then drove M.B. to a vacant lot and "repeatedly strangled and raped [her] over the course of 20 hours." Doc. 224 at 3; *see also* Doc.

---

[1] Bachicha operated a semi-truck repair business which gave him access to vehicles like the white semi-truck. *See* Doc. 189 at 197:5-198:4. It is plausible that the white semi-truck was a semi-truck he had been employed to repair, but that theory could not be confirmed by law enforcement. *See id.* And the white semi-truck was never recovered by law enforcement. *Id.*

188 at 51:5-12, 59:18-64:11. That assault, which lasted into the morning hours of the next day, ended only after Bachicha's ankle monitor began to beep (its battery was apparently running out of juice).[2] Doc. 188 at 80:20-84:12. A sexual assault exam later confirmed over thirty separate injuries and the presence of Bachicha's DNA on M.B.'s body. Doc. 224 at 3.

## B.     Charges and Bachicha's Motion to Dismiss

The United States opted to prosecute Bachicha; it charged him with two counts of kidnapping pursuant to 18 U.S.C. § 1201. Doc. 224 at 3-4; Doc. 7.[3] The superseding indictment alleged that he "used a motor vehicle, a means, facility, and instrumentality of interstate commerce" in commission and furtherance of the kidnappings of M.B. and R.C. Doc. 7.

Before trial, Bachicha filed a motion to dismiss in which he challenged the sufficiency of the indictment. Doc. 115. He argued that a "motor vehicle" is not an instrumentality of interstate commerce and that the federal kidnapping statute should not be applied to "a purely local, intrastate activity which had no economic effect on interstate commerce simply because an item associated with the kidnaping previously traveled in interstate commerce"—i.e., was manufactured in another state. *Id.* at 1. Bachicha further contended that using a motor vehicle does not automatically give rise to federal jurisdiction and that his use was without economic effect on interstate commerce (either in isolation or in the aggregate). *Id.* at 2.

The Government opposed Bachicha's motion. *See* Doc. 124. It argued that in the absence of Tenth Circuit guidance, the Court should follow authority from the Sixth and Seventh Circuits

---

[2] *See* Doc. 188 at 205:2-8 (explaining that ankle-worn GPS monitors like Bachicha's "only last about 24 hours"); Doc. 189 at 267:2-25 (describing that an ankle-worn GPS monitor will begin to beep when its battery is low).

[3] The superseding indictment refers to M.B. as "Jane Doe 1" and R.C. as "Jane Doe 2." *See* Doc. 7; *see also* Doc. 188 at 40 (referring to M.B. as Jane Doe 1), 117 (referring to R.C. as Jane Doe 2).

which found use of cars to commit intrastate kidnappings "satisfied the kidnapping statute's interstate commerce" element. *Id.* at 4. The Government also contended that Bachicha's motor vehicles, a semi-truck and an SUV registered in the name of a business, were not "common" vehicles, thereby suggesting a direct connection to interstate commerce. *Id.* at 6.

The Court ultimately denied Bachicha's motion, holding that the federal kidnapping statute's plain language supported the conclusion that motor vehicles qualify as instrumentalities of commerce. Doc. 166 at 2. The reasoning underlying that decision was twofold.

First, the Court understood the Tenth Circuit's decision in *United States v. Morgan*, 748 F.3d 1024 (10th Cir. 2024) to allow for the possibility that purely intrastate conduct may, in some instances, fall under the purview of federal regulation. *Id.* at 1031. In that case, the perpetrators used a cell phone, GPS, and the internet (along with a vehicle) to facilitate the kidnappings. *Id.* at 1031-32. The charged criminal activity occurred exclusively intrastate, and for that reason, the defendants asserted that "the indictment's reliance on their use of any of these devices violates the Commerce Clause."[4] *Id.* at 1031. Despite the defendant's protestations, the convictions were upheld. *Id.* at 1031-32. In reaching its decision, the Tenth Circuit explained that Congress's regulatory reach under the Commerce Clause is not limited to interstate activity.

> Nowhere in *Lopez* or any other case has the Supreme Court limited Congress's regulatory authority to prevent the harmful use of an instrumentality of interstate commerce. Indeed, the *Lopez* Court said 'Congress is empowered to regulate and protect the instrumentalities of interstate commerce . . . even though the threat may come only from intrastate activities.'

---

[4] The defendants also raised a facial challenge to the constitutionality of the kidnapping statute. *Morgan*, 748 F.3d at 1031. The Tenth Circuit did not consider that argument, finding against the defendants on the as-applied challenge. *Id.* at 1031-32.

*Id.* at 1032 (quoting *United States v. Lopez*, 514 U.S. 549, 558 (1995)).[5]

Second, this Court looked to decisional authority interpreting federal statutes in other circuits, all of which have held that motor vehicles constitute instrumentalities of interstate commerce. Doc. 166 at 3-4 (citing *United States v. Bishop*, 66 F.3d 569, 590 (3d Cir. 1995); *United States v. Cobb*, 144 F.3d 319, 322 (4th Cir. 1998); *United States v. McHenry*, 97 F.3d 125, 126-27 (6th Cir. 1996); *United States v. Robinson*, 62 F.3d 234, 236-37 (8th Cir. 1995); *United States v. Oliver*, 60 F.3d 547, 550 (9th Cir. 1995)); *see also United States v. Windham*, 53 F.4th 1006, 1013 (6th Cir. 2022) (citing the Sixth Circuit's opinion in *McHenry*—which involved the federal carjacking statute—for the proposition that "cars and phones are instrumentalities of interstate commerce"). That decisional authority was persuasive, and the Court adopted the reasoning and outcome in those decisions.

## C.    The Trial

Having denied Bachicha's motion to dismiss the indictment, the matter proceeded to trial. M.B. and R.C. both testified, and each identified Bachicha as their assailant. *See* Doc. 188 at 47:1-67:17 (M.B. describing her kidnapping and assault), 119:17-130:18 (R.C. detailing her kidnapping and assault). T.M. and R.O. also testified.[6] T.M. told jurors that Bachicha strangled her and forced her to perform oral sex before she was able to escape from his semi-truck. Doc. 189 at 51:4-56:25.

---

[5] The Tenth Circuit's opinion in *Morgan* also cited *United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005) for the proposition that "congressional power to regulate the channels and instrumentalities of commerce includes the power to prohibit their use for harmful purposes, even if the targeted harm itself occurs outside the flow of commerce and is purely local in nature." *Morgan*, 748 F.3d at 1032 n.7.

[6] *See* Fed. R. Evid. 413(a) ("In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault."); Doc. 164 (order granting motion in limine to admit both R.O. and T.M.'s testimonies under Rule 413).

R.O. testified that Bachicha choked her, transported her into the mountains, and sexually assaulted her for fifteen hours. *Id*. at 86:10-94:1. Three of the victims, M.B., R.C., and R.O. testified that Bachicha used vehicles to abduct and confine them during the attacks. Doc. 188 at 51:2-4 (M.B.'s testimony), 121:4-122:14 (R.C.'s testimony); Doc. 189 at 86:10-87:25 (R.O.'s testimony). The remaining victim, T.M., testified that Bachicha restrained her in a semi-truck and sexually assaulted her. Doc. 189 at 52:9-53:17.

Regarding Bachicha's vehicles, Utah Smith, a truck sales consultant for Inland Kenworth and former commercial driver, explained that the white semi-truck Bachicha used to kidnap R.C. originated from one of two Kenworth manufacturing plants either in Washington or Ohio. *Id.* at 235:1-236:20, 237:14-238:23, 245:16-246:20.[7] He conceded that he had no knowledge of whether the semi-truck "ever traveled out of state" following shipment to New Mexico. *Id.* at 253:24-54:11. Special Agent Daniel Fondse of the Federal Bureau of Investigation[8] testified regarding his investigation into the vehicles' connection to interstate commerce. Doc. 191 at 88:19-93:14. He explained that because the SUV and semi-truck were manufactured outside of New Mexico,[9] in his opinion, Bachicha's vehicles qualified as instrumentalities of interstate commerce. *Id.* at 112:3-8. Agent Fondse further noted that Bachicha's SUV was registered with an interstate carrier, but

---

[7] Mr. Smith was a commercial driver for almost fifteen years. Doc. 189 at 237:1-4. He drove a Kenworth W900, the same model as the white semi-truck Bachicha used, for approximately five years. *Id*. at 237:9-20, 241:17-243:13.

[8] At the time the case had been referred to him, Agent Fondse worked on the violent crime squad. Doc. 191 at 84:15-85:1. He eventually became the federal case agent on the investigation involving Bachicha. *Id.* at 85:2-7. Though the investigation was initiated by the Albuquerque Police Department and District Attorney's Office for Bernalillo County, the case was adopted federally. *See id.* at 85:8-87:4.

[9] Bachicha's SUV was manufactured in Kentucky. Doc. 191 at 91:1-7.

he agreed that there was no evidence either vehicle was used in interstate commerce. *Id.* at 91:8-93:14, 112:15-113:1.

The parties stipulated that the vehicles Bachicha used in perpetrating his kidnappings were "manufactured outside the State of New Mexico" and that they were "instrumentalities of interstate commerce." Doc. 172.[10] The Government read that stipulation during the trial, and the jury was instructed on the matter as follows: "Interstate commerce means commerce or travel between one state, territory, or possession of the United States and another state, territory or possession of the United States, including the District of Columbia. Commerce includes travel, trade, transportation and communication." Doc. 191 at 82:8-83:3, 205:13-19.

After receiving the case and the forementioned instructions for determining whether interstate commerce happened in the context of a federal kidnapping charge, the jury returned guilty verdicts on both counts. Doc. 186.

**D.    *United States v. Chavarria***

Following the trial, but before Bachicha was sentenced, the Tenth Circuit issued its decision in *United States v. Chavarria*, 140 F.4th 1257 (10th Cir. 2025). There, the court ruled that "motor vehicles" are not "per se" "instrumentalities of commerce." *Id.* at 1266. It explained that the term motor vehicles could potentially include several machines having "no cognizable relationship to commerce[,]" like e-bikes, lawnmowers, electric scooters, elevators, and motorized wheelchairs, and that such an interpretation would expand the Commerce Clause's reach beyond permissible bounds. *Id.* at 1266-67. Though the Tenth Circuit's opinion included a lengthy discussion on the history and reach of the Commerce Clause, the court cabined its opinion, holding

---

[10] "Notwithstanding his prior objection," Bachicha stipulated the vehicles were instrumentalities of interstate commerce. Doc. 172. The parties do not dispute whether Bachicha properly preserved his challenge to the indictment. *See* Doc. 221; Doc. 224.

"only that 'motor vehicles'—an undefined, generic term—are not per se instrumentalities of interstate commerce for purposes of the federal kidnapping statute." *Id.* at 1268.

After *Chavarria* was issued, the Court requested briefing and argument to assess the impact of that decision on this case. Doc. 219. Predictably, the parties have differing perspectives on the matter. Bachicha requests dismissal of the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(2).[11] Doc. 221. He argues that in light of the Tenth Circuit's decision in *Chavarria*, the superseding indictment is "fatally deficient," and this Court therefore lacks jurisdiction over this matter. *Id.* at 7. He asserts that the jury's verdict should therefore be disregarded, and he should be released from custody. *Id.* at 3. The Government disagrees, proposing that any defect in the superseding indictment is not a jurisdictional error, and the guilty verdict should stand. Doc. 224 at 10-11. It claims that given the evidence the jury heard about Bachicha's "automobiles," any defect in the superseding indictment regarding the instrumentality-of-commerce element amounts to harmless error. *Id.* at 14-16.

## ANALYSIS

### A.    Automobiles as Instrumentalities of Interstate Commerce

The *Chavarria* holding is narrow. The Tenth Circuit expressly limited the scope of that decision finding "only that 'motor vehicles'—an undefined, generic term—are not per se instrumentalities of interstate commerce for purposes of the federal kidnapping statute." 140 F.4th at 1268. And so, there is much that *Chavarria* left unanswered. Relevant here is the question of whether automobiles, like Bachicha's SUV and the white semi-truck, qualify as per se

---

[11] Bachicha's initial challenge to the indictment was timely. Doc. 115; *see also* Fed. R. Crim. P. 12(b)(3) (motions challenging "a defect in the indictment" including "failure to state an offense" must be made prior to trial). Despite being filed after trial, there is good cause to consider Bachicha's current motion due to the Tenth Circuit's opinion in *Chavarria*. *See* Fed. R. Crim. P. 12(c)(3); Doc. 224 at 13 n.3 (conceding good cause exists).

instrumentalities of commerce for purposes of the federal kidnapping statute. Although the Tenth Circuit has not directly addressed the issue, the Fifth, Sixth, and Seventh Circuits have—each resolving the question in the affirmative.

The Seventh Circuit addressed the issue in *United States v. Protho*, 41 F.4th 812 (7th Cir. 2022). There, the defendant, Bryan Protho, abducted a child from the sidewalk, drove her a few blocks away, and assaulted the child in his truck. *Id.* at 819-20. The defendant was indicted and charged with kidnapping pursuant to § 1201(a). A jury convicted Protho, and he subsequently appealed. Protho contended (among other arguments) that the government had not proven a sufficient nexus between his actions and interstate commerce and that (relatedly) the district court erred when instructing the jury that "[t]he defendant used a means, facility, or instrumentality of interstate commerce if he used an automobile . . . ." *Id.* at 828. The crux of his argument was akin to the challenge Bachicha raises here—i.e., "that an automobile can only qualify as an instrumentality of interstate commerce when evidence shows that the specific automobile at issue was, at some point, used for that purpose." *Id.* The Seventh Circuit rejected this argument, holding that "it's the nature of the regulated object's class (here, automobiles) rather than the particular use of one member of that class (Protho's Ford Explorer) that matters." *Id.* (emphases omitted). And the court noted that "[n]early all circuits have followed this course when faced with similar questions," and that no court had adopted Protho's take on the matter.[12] *Id.* at 829 (collecting cases).

---

[12] The Court recognizes that Protho traveled from Indiana to Illinois the same day as the kidnapping, traveled across state lines to conduct a drug deal, and regularly traveled in his truck between Illinois and Indiana. 41 F.4th at 828. But that travel was not a consideration underscoring the Seventh Circuit's reasoning and ruling. Indeed, the *Protho* court rejected the defendant's individualized approach requiring examination of each proposed instrumentality's nexus to interstate commerce and instead looked to the nature of the instrumentality's class as a whole. *Id.*

Following *Protho*, the Sixth Circuit also held that a car is an instrumentality of interstate commerce for purposes of the federal kidnapping statute. *United States v. Windham*, 53 F.4th at 1013. There, the defendant pled guilty to kidnapping a victim, "M.S.," "for ransom and reward and otherwise" in violation of § 1201. *Id.* at 1009 (internal quotation marks omitted). The defendant later challenged his plea, arguing "that Congress does not have power to regulate the kidnapping to which he pleaded guilty." *Id.* at 1011. The issue presented was whether an automobile (or a cell phone) constitutes an instrumentality of interstate commerce under § 1201(a)(1)—the federal kidnapping statute—in the absence of evidence showing either was used in interstate activity. *Id.* at 1012. The Sixth Circuit framed the question as a determination of "whether cars and cell phones are instrumentalities of interstate commerce, not whether they were used interstate." *Id.* at 1013 (emphasis omitted). The court held that they are. It noted that prior rulings had "repeatedly and unambiguously [held] that cars and phones are instrumentalities of interstate commerce" and that "[w]hen a car or cell phone is used 'in committing or in furtherance of' a kidnapping for ransom, reward, or otherwise, the federal kidnapping statute applies." *Id.* (citing *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999) (explaining that intrastate use of a phone to execute a murder-for-hire plot fell within the federal statute's purview); *United States v. McHenry*, 97 F.3d 125, 126 (6th Cir. 1996) (stating that "cars are themselves instrumentalities of commerce")).

The Fifth Circuit, relying on its prior precedent, also found "that the interstate nexus requirement for federal crimes is satisfied by . . . wholly intrastate use of an automobile[,]" even when the car is used for a kidnapping within the limits of a singular county. *United States v. Gonzales*, No. 21-10631, 2022 U.S. App. LEXIS 12297, at \*2-3 (5th Cir. May 5, 2022) (per curiam) (citing *United States v. Marek*, 238 F.3d 310, 318-19 (5th Cir. 2001) (en banc)).

11

The preceding decisional authority supports (if not expressly adopts) the proposition that automobiles are per se instrumentalities of interstate commerce sufficient to meet the relevant element of § 1201. In the absence of a contrary ruling from the Tenth Circuit,[13] the decisions from our sister circuits are persuasive.[14] *See United States v. Cobb*, 144 F.3d 319, 322 (4th Cir. 1998) (holding that automobiles are inherently "instrumentalities of interstate commerce because they are essential to the carriage of persons and goods moving in interstate commerce."). The Court holds that an automobile is an instrumentality of interstate commerce for purposes of the federal kidnapping statute.[15]

---

[13] The *Chavarria* decision does not alter the Court's conclusion. To be sure, the Tenth Circuit distinguished *Protho* and *Windham*, but notably, it qualified its discussion of those opinions stating, "even if we assumed *Protho* and *Windham* were right that cars or automobiles fit the categorical approach, that would not automatically mean that 'motor vehicles' do, too." *Chavarria*, 140 F.4th at 1267.

[14] Other district courts have followed the holdings in *Windham* and *Protho*. *See, e.g., United States v. Arif*, No. 4:20-cr-35, 2024 U.S. Dist. LEXIS 93295, at *6 (E.D. Ark. May 24, 2024); *United States v. Rhoden*, No. CR22-4073, 2024 U.S. Dist. LEXIS 20406, at *12-13 (N.D. Iowa Feb. 6., 2024).

[15] The Court agrees with the reasoning of the Seventh Circuit in *Protho* that categorical classification of automobiles as per se instrumentalities is appropriate. *See Protho*, 41 F.4th at 828 ("[W]e do not agree with [defendant]'s view that the Commerce Clause asks us to consider each automobile's specific use in interstate commerce. Instead, it's the *nature* of the regulated object's class . . . rather than the particular *use* of one member of that class . . . that matters."). To require the Government to plead an automobile's particular relationship to interstate commerce in the indictment would functionally impose an additional element into § 1201 unsupported by the text of that statute. Had Congress included language requiring a clear relationship between the means, facility, or instrumentality used by the defendant and interstate commerce, such as "used in" or "affecting interstate commerce," a case-by-case analysis of the pled instrumentality would be reasonable. *See Arif*, 2024 U.S. Dist. LEXIS 93295, at *7-8 (explaining that although a car is an instrumentality of interstate commerce, the federal statute criminalizing sex trafficking of minors, 18 U.S.C. § 1591(a)(1), requires the Government prove the criminal conduct was "in or affecting interstate or foreign commerce" (internal quotation marks omitted)). § 1201 is devoid of that language. Further, the Court is persuaded that automobiles are a sufficiently discreet class of instrumentalities of interstate commerce that spelling out the additional nexus to interstate commerce is superfluous.

Even assuming, arguendo, that is not the case, the Court is convinced that Bachicha's particular use of vehicles to kidnap and confine his victims is sufficient to satisfy the jurisdictional benchmark. Bachicha's criminal conduct was made possible only through the use of automobiles. The vehicles were used to abduct victims, transport them on public roadways, and hold them in secluded locations where his criminal conduct would not be detected. Doc. 188 at 122:23-129:25 (R.C. explaining Bachicha drove her to a parking lot and sexually assaulted her); *Id.* at 51:2-54:24, 59:14-65:3 (M.B. stating that Bachicha drove her to a vacant lot and assaulted her). Trial testimony and exhibits proffered in support of witness statements proved this to be true. Doc. 191 at 93:13-98 (Agent Fondse testifying that location data from Bachicha's ankle monitor and M.B.'s cell phone show that Bachicha abducted M.B., drove her to a dirt lot, and then around Albuquerque, before finally releasing her at a Walmart parking lot), 98:4-99:8 (Agent Fondse clarifying that Bachicha's ankle monitor location corroborated R.C.'s testimony that Bachicha drove her from a truck stop to a U-Haul parking lot). Indeed, this was not a situation involving the mere imprisonment of a person "in the back of a decommissioned semi." *Chavarria*, 140 F.4th at 1264 n.15.[16] The transportation of victims, against their will, was a core component of Bachicha's criminal conduct. *See Cobb*, 144 F.3d 319.

---

[16] The district court decision in the *Protho* matter provided a similar comparison, noting that
>If Protho's vehicle had been gutted of its operating components, or even stripped of its wheels and put up on blocks in his backyard, he might have an argument that it could no longer be used to move goods or people and thus could not form the basis for criminal liability under the federal kidnapping statute. As the record stands, however, there is no reasonable dispute that his vehicle qualifies as an instrumentality of interstate commerce.

*United States v. Protho*, No. 17-cr-00827, 2021 U.S. Dist. LEXIS 49515, at *17-18 (N.D. Ill. Mar. 16, 2021).

Further, the automobiles Bachicha used to commit the crimes were also commercial in nature. Expert testimony demonstrated the make and model of Bachicha's white semi-truck is often used by commercial drivers. *See* Doc. 189 at 237:8-240:9. It was produced and assembled by Kenworth, a nationally prevalent commercial truck manufacturer. *Id.* at 239:9-246:8. The gold SUV Bachicha used was registered to a motor carrier designated by the United States Department of Transportation ("DOT") Federal Motor Carrier Safety Administration ("FMCSA") as operating interstate. U.S. Trial Ex. 47 at 1 (FMCSA Safety and Fitness Electronic Records System ("SAFER") Web Snapshot for Saiz Trucking and Earth Moving, Inc.). Simply put, both vehicles possessed the hallmarks of those used in commercial enterprise.

Accordingly, the Court finds Bachicha's automobiles, his SUV and semi-truck, constitute instrumentalities of interstate commerce both categorically and as Bachicha used them here.

**B.     Bachicha's Challenge to the Superseding Indictment**

Bachicha does not address the interstate commerce issues discussed above; his focus is on the superseding indictment. He argues that because the relevant charging language is deficient, this Court lacked jurisdiction to adjudicate the claims against him. Doc. 221 at 4, 7-8. But whether Bachicha's vehicles constitute instruments of interstate commerce—either through the categorical approach or their particular use in this case—is something the government must prove as an element of the crime. *United States v. Cotton*, 535 U.S. 625, 630-31 (2002) ("A district court has jurisdiction of all crimes cognizable under the authority of the United States and the objection that the indictment does not charge a crime against the United States goes only to the merits of the case." (citation modified) (quoting *Lamar v. United States*, 240 U.S. 60, 65 (1916))). It is a merits question not a jurisdictional bar. So, while "[a]n effect on interstate commerce may be required for Congress to have authority under the Commerce Clause to forbid certain conduct . . . that does

not imply that a district court faced with an insufficient interstate-commerce nexus loses subject-matter jurisdiction of the case." *Alikhani v. United States*, 200 F.3d 732, 735 (11th Cir. 2000) (per curiam). *See also United States v. Prentiss* (*Prentiss I*), 256 F.3d 971, 982 (10th Cir. 2001) (per curiam) (stating that "the Government's failure to allege the [jurisdictional element] in the indictment did not deprive the district court of subject matter jurisdiction to hear the case, although Defendant ultimately may be entitled to dismissal of the indictment"), *overruled in part on other grounds by United States v. Cotton*, 535 U.S. 625. Rather, the existence of the subject matter jurisdiction arises from 18 U.S.C. § 3231, which confers district courts with exclusive jurisdiction over all crimes against the United States. "So long as an indictment 'charges the defendant with violating a valid federal statute,' it 'invokes the district court's subject-matter jurisdiction.'" *United States v. Tovar*, 146 F.4th 1318, 1323 (11th Cir. 2025) (quoting *United States v. Brown*, 752 F.3d 1344, 1354 (11th Cir. 2014)). "That's the beginning and the end of the 'jurisdictional' inquiry." *Prentis I*, 256 F.3d at 982 (quoting *Hugi v. United States*, 164 F.3d 378, 380) (7th Cir. 1999)). And given this authority, the Court finds that it possessed jurisdiction to preside over Bachicha's trial.

## C.      Structural Error and Harmless Error

Having determined that the Court had jurisdiction to preside over Bachicha's trial, the Court next considers whether the deficiency in the indictment resulted in an error necessitating abrogation of the jury's verdict. To that end, the Court begins by first assessing whether that omission constitutes a structural error and then conducts a harmless-error review.

"[A] structural error is one that 'affect[s] the framework within which the trial proceeds' rather than being 'simply an error in the trial process itself.'" *United States v. Trujillo*, 960 F.3d 1196, 1204 (10th Cir. 2020) (quoting *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017)). It

deprives "defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence[.]'" *Neder v. United States*, 527 U.S. 1, 8-9 (quoting *Rose v. Clark*, 478 U.S. 570, 579 (1986)). Those limited instances in which courts have found structural error include "introduction of coerced confession," "complete denial of right to counsel," and "adjudication by biased judge." *Rose v. Clark*, 478 U.S. 570, 577 (1986) (collecting cases). *See also Weaver v. Massachusetts*, 582 U.S. 286, 295, 297-98 (2017) (listing examples of structural errors, including "the right to select [the defendant's] own attorney," "if the judge fails to give a reasonable-doubt instruction," and the right to a public trial within limited circumstances). In nearly all other instances, "[i]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional errors that may have occurred are [not structural errors.]" *United States v. Gonzalez-Huerta*, 403 F.3d 727, 734 (10th Cir. 2005) (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)).

This case is not one of the rare instances in which an error fundamentally undermined the judicial process. The indictment's use of the generic term "motor vehicle"—rather than automobile, car, vehicle, or any other synonym—is not a sufficient basis warranting abdication of the jury verdict. Indeed, to hold otherwise would treat indictment errors as categorically structural thereby turning "questions of criminal statutory construction and the sufficiency of indictments into unwarranted jurisdictional inquiries." *Prentiss I*, 256 F.3d at 982. That result defies common sense, and it is at odds with the Supreme Court's holding in *Cotton*, which counsels that an indictment's omission of an element, even an essential element, is not so intrinsically harmful as to require automatic reversal. *Cotton*, 535 U.S. at 632-33 (citing *Johnson v. United States*, 520 U.S. 461, 469-70 (1997) (finding "no basis for concluding that the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings'" when the materiality prong of the

false-statement offense was not included in the lower court's jury instructions because the evidence was otherwise "overwhelming" and "essentially uncontroverted")). Reversal on technical grounds, especially when the burden to the defendant is minimal, is cautioned against. *See Prentiss I*, 256 F.3d at 983 ("[R]eversal of error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.") (quoting *Johnson v. United States*, 520 U.S. 461, 470 (1997))).

That is not to say, however, that the superseding indictment's deficient language should be summarily overlooked. *See id.* at 982 ("If the Government alleged, but failed to prove those elements, we would not say the district court was deprived of subject matter jurisdiction to hear the case; rather we would say Defendant was entitled to acquittal."). While an indictment's failure to allege an essential element of a federal crime "is not so intrinsically harmful as to require automatic reversal[,]" impact of the omission or ambiguity must nevertheless be evaluated. *Id.* at 974 (quoting *Neder*, 527 U.S. at 7). This process, referred to as harmless-error review, asks "[w]hether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* at 985 (quoting *Neder*, 527 U.S. at 15). Stated differently, the Court determines "whether the omitted elements were 'uncontested and supported by overwhelming evidence.'" *United States v. Prentiss* (*Prentiss II*), 273 F.3d 1277, 1278 (10th Cir. 2001).

In hindsight, and with the benefit of the Tenth Circuit's holding in *Chavarria*, the superseding indictment's failure to specify the type of motor vehicle Bachicha used to facilitate his kidnappings was error.[17] And this Court's decision upholding the validity of that indictment

---

[17] The Court notes that if the indictment had omitted any reference to the type of instrumentality of interstate commerce that Bachicha utilized in the commission of his crimes, the indictment would have likely been deemed sufficient. *See e.g. United States v. Powell*, 767 F.3d 1026, 1030 (10th Cir. 2014).

was wrong. Yet, *Cotton* and *Prentiss I* counsel that an indictment's error in pleading elements of a crime, even essential elements, is not a structural error requiring automatic reversal. Rather, the reviewing court must consider that error in light of the evidence admitted at trial. Here, after reviewing the relevant evidence and testimony admitted at trial, the Court finds the superseding indictment's erroneous instrumentality-of-interstate-commerce allegation did not contribute to the jury's verdict. Two independent grounds support this conclusion.

First, as discussed above, the Court is convinced by the Government's argument and the persuasive authority of the Fifth, Sixth, and Seventh Circuits that automobiles, like Bachicha's SUV and semi-truck, are per se instrumentalities of interstate commerce. *See Gonzales*, 2022 U.S. App. LEXIS 12297, at *2-3; *Protho*, 41 F.4th at 828-29; *Windham*, 53 F.4th at 1013. And the evidence was uncontroverted that Bachicha's vehicles were the means he used to facilitate the abduction and confinement of his victims.

Second, even if the Court were disinclined to follow that authority, the jury was provided evidence that Bachicha operated a gold SUV registered under Saiz Trucking and Earthmoving, Inc.[18] and a white semi-truck in the commission of his crimes. *See* Doc. 188 at 210:8-219:24; Doc. 184 at 5 (noting admission of Government's exhibits 30a through 30g); U.S. Trial Ex. 30(a) (depicting a maroon semi-truck and a gold SUV parked outside of Bachicha's residence). The evidence also showed that Bachicha used the SUV and semi-truck to capture his victims and drive them on public roads to secluded locations. There, he would hold his victims while raping them. Doc. 188 at 51:2-54:24, 59:14-65:3 (M.B. testifying that Bachicha, after abducting her off the street, drove her to a vacant lot in his car), 122:23-129:25 (R.C. detailing how Bachicha drove her

---

[18] Saiz Trucking and Earthmoving, Inc. was registered as an interstate carrier. Doc. 191 at 91:15-93:14; U.S. Trial Ex. 47.

to multiple locations over the course of her confinement in his semi-truck); Doc. 189 at 182:1-84:14 (former Albuquerque Police Department Detective Alexander Bassiri explaining that Bachicha picked R.C. up at a truck stop, transported her to multiple locations, and assaulted her over the course of fifteen to sixteen hours). The evidence against Bachicha was overwhelming, and facts showing his use of the SUV and semi-truck as a means of committing his crimes were largely uncontroverted. The cumulative weight of this evidence provided the jury with a sufficient factual basis to find that Bachicha used an instrumentality, means, or facility of interstate commerce—his SUV and the white semi-truck— to commit the kidnappings of M.B. and R.C. The jury's verdict would not have changed had the superseding indictment alleged Bachicha used "automobiles" to commit his crimes, or more narrowly, that he used an SUV and a semi-truck.

Consequently, the Court finds the superseding indictment's allegation that Bachicha used motor vehicles as an instrumentality, means, or facility of interstate commerce amounts to harmless error. Sufficient evidence was before the jury to find Bachicha violated § 1201, including overwhelming and uncontroverted evidence that Bachicha used an SUV and a semi-truck to facilitate his kidnappings. The Government has demonstrated the superseding indictment's error did not contribute to the jury's verdict, and because Federal Rule of Criminal Procedure 52(a) requires the Court to disregard harmless errors, the jury's verdict will not be vacated on that ground.

## CONCLUSION

For the forgoing, Bachicha's Motion to Dismiss Indictment for Failure to State a Federal Offense/Lack of Federal Jurisdiction, Doc. 221, is denied.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA